## Wabash Railroad Company v. Mary Mahoney.

1. PRACTICE—*Violation of Ordinance.*—Where a violation of an ordinance is the gist of the action, the burden of proof is upon the plaintiff to show the existence of the ordinance before he can recover.

2. ATTORNEYS—*Improper Statements in Court.*—Where an attorney in the course of his argument before the jury made several improper remarks, some of which, on objection sustained by the court, were stricken out, *it was held* that while the remarks were improper and called for a severe rebuke to counsel, a new trial would not be awarded by the Appellate Court, for that reason alone.

Trespass on the Case, for personal injuries. Trial in the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the March term, 1898. Reversed and remanded. Opinion filed November 16, 1898.

### STATEMENT OF THE CASE.

Appellee brought suit against appellant and three other railway companies, for injuries received by her by being thrown from a top buggy which was tipped over, as it is

alleged, by reason of the horse drawing it becoming fright-
ened by a freight train of appellant approaching from the
north, going at the rate of twenty miles per hour at the
intersection of the railway tracks by a public highway,
Archer avenue, in the city of Chicago.  On a trial before
the Superior Court and a jury, the suit as to the other three
defendants having been dismissed by the court at close of
plaintiff's evidence, appellee recovered a verdict of $1,200
against appellant, from which the court required her to
remit $400, and then rendered judgment in her favor for
$800.  Appellant has appealed.

The declaration consists of two counts.  The first count
alleges that on the 21st day of September, 1893, the defend-
ants were corporations, and were possessed of, using and
operating a certain railroad in the city of Chicago, which
railroad was intersected by a public highway known as
Archer avenue, over, on and upon which said highway, as the
defendants by the exercise of reasonable diligence could
have known then, many people passed every day; and were
also possessed of, using and operating a locomotive engine
and train of cars, which they were then and there moving
along and upon said railroad there; that on the day and
year aforesaid, the plaintiff was riding in a certain buggy
along and upon said Archer avenue, and exercising reason-
able care and caution for her own safety in so doing, and
that it then and there became and was the duty of said
defendants to apprise the plaintiff in some manner of the
approach of said locomotive engine and train of cars to said
Archer avenue.  And yet the defendants, wholly disregard-
ing their said duty, then and there ran and drove said loco-
motive engine and train of cars carelessly, negligently and
recklessly along and upon said railroad, to and upon said
Archer avenue, without giving the plaintiff any notice of the
approach of said locomotive engine and train of cars, and
then and there carelessly, negligently and recklessly ran
and drove said locomotive engine and train of cars at a high
and reckless rate of speed, to wit, at the rate of twenty
miles an hour, and in such close proximity to the plaintiff

that the horse drawing the buggy in which the plaintiff was riding became thereby greatly frightened and alarmed, and suddenly wheeled and turned, thereby causing said buggy to tip over, whereby the plaintiff was thrown out of said buggy and injured, setting forth the injuries.

The second count is based upon an ordinance of the city of Chicago requiring railways to keep a flagman at railway crossings, but inasmuch as the ordinance was not received in evidence, it is unnecessary to set it out.    Appellant pleaded the general issue.    At the close of plaintiff's evidence, and also at the close of all the evidence and before argument, appellant presented to and asked the court to give an instruction in writing to the jury directing a verdict for it, which was refused.    After appellant's motion for a new trial was overruled, it moved the court in arrest of judgment, but this motion was overruled.    The appellant preserved exceptions to each of the court's said rulings.

GEO. B. BURNETT, attorney for appellant.

WING, CHADBOURNE & LEACH, attorneys for appellee.

· MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

Appellant has argued three points : first, that there was error in overruling its motion in arrest; second, that the verdict is not sustained by a preponderance of the evidence; and, third, that appellant should have a new trial because of improper remarks of appellee's counsel in his closing argument to the jury.

1st.    The contention as to the motion in arrest is, that the first count of the declaration does not allege sufficient facts to show any duty of appellant toward appellee and the violation of any duty by appellant.    It may be conceded that this count was bad on demurrer, but after a plea of not guilty, trial had thereon and verdict, we are of opinion that any defects pointed out by appellant were cured by the verdict.    Barker v. Koozier, 80 Ill. 206; C. & E. I. R. R. Co. v. Hines, 132 Ill. 165.

It is unnecessary to consider the second count, inasmuch as it is based upon a city ordinance; and as the ordinance was not admitted in evidence, it follows that the judgment can not be sustained on that count. The violation of the ordinance was the gist of that count, and to recover under it the ordinance should have been proven.

2d. After a full and careful consideration of the evidence relating to the circumstances of the accident, we are of opinion that appellee failed to establish her case by a preponderance of the proof. In this regard she was the only witness in her behalf, and she is positively contradicted by two disinterested witnesses, Krieger and Lorenz, the flagman and gateman, respectively, at the crossing of Archer avenue, near which the accident happened. I. C. R. R. Co. v. Alexander, 46 Ill. App. 505; Peaslee v. Glass, 61 Ill. 94; Belden v. Innis, 84 Ill. 78.

The declaration alleges that the train of appellant was run at a high and reckless rate of speed, to wit, at twenty miles per hour, without giving plaintiff any notice of its approach, and in such close proximity to plaintiff that the horse thereby became greatly frightened and alarmed, and suddenly wheeled and turned, thereby causing the buggy to tip over.

Plaintiff testified that as she approached the crossing she heard no bell ringing and heard no signal of any kind, but says the flagman grabbed the horse as she was getting across the tracks, and he had some kind of a light in his hands; that " the horse got scared from the train, I expect; when we came off the track the horse started to run;" that the horse was going about eight or nine miles an hour, until we came near the tracks—about, may be, ten or fifteen feet away; that she looked to see if any train was coming when they were coming near the tracks, from nine to fifteen feet; that the train was going at about twenty miles per hour, at about the same rate of speed that other freight trains pass there sometimes; that as compared to other freight trains she saw passing that crossing, it seemed to her to be going fast; that was simply her judgment, but that she hadn't

had any experience which would enable her to judge the speed of a railroad freight train, no more than any other person passing over that crossing.

Krieger and Lorenz were experienced railroad men. Krieger had been on that crossing eight years and Lorenz six years. They said the train was going about eight miles per hour. Krieger says that at the time of the accident the train was 200 to 220 feet away, and to the north of the crossing; that it was not very dark. Lorenz says that when the buggy tipped over, which was seventy-five to a hundred feet from and east of the crossing, the train was about 100 feet away from the crossing. They both say that the gateman's bell was rung. Krieger says there were bells on the gates which ring by the operation of the gates five times as they go down, and that the watchman standing on the crossing swung his lantern as the horse and buggy came down the street toward the crossing, Lorenz says when the horse was twenty-five feet from the crossing, and Krieger says when the horse was eighty feet away, and when it came closer, he swung his lamp faster; that the man who was driving took the whip and whipped at his horse; "it was going very fast then, and then I hollered at him to stop, and swung the lamp and jumped out, run out from the tracks under the gate; tried to keep him back;" that when he (the driver) "found I would not let him go, he jerked his horse around, and in going around, the first two wheels got about one-half over the first rail, and in going around ran back at a distance of about eighty feet from the crossing, struck the sidewalk and the buggy upset." They both say that the gateman did not grab the horse, as plaintiff testified. From the whole evidence, we think it fails to appear from a preponderance that the horse was frightened by the train, and we are inclined to the opinion that the accident was the result of the buggy striking the sidewalk, by reason of reckless and rapid driving, and that a far more serious accident was averted by the watchfulness and strict attention to their duties of the flagman and gateman.

3d.   Counsel for plaintiff, in his closing argument to the jury, by inference, if not directly, stated to the jury that the "flagman was asleep or drunk," of which there was no evidence.   After an exception to the remark, he stated, "I withdraw, then, the remark."   Also in his argument he used the following language, to which there was an objection by attorney for appellant and a ruling by the court, viz.:

"Now, gentlemen, my time is drawing very close.   When you consider this case, and after considering it you come to the conclusion the plaintiff is entitled to some damages for the injury she received, against this company, and that those damages are such as will repay her for her loss of time and compensate her for pain and suffering she endured as the result of that injury, I want you, gentlemen, if you come to that conclusion, when you are off this panel, to go out to the corner of Archer avenue and Stewart avenue, and stand there and watch those tracks for about fifteen minutes, as I have done; if you will do it, gentlemen, you will go home to your wives and sisters and will say there is one good thing you did while on the jury in Judge Ball's court; you know for certain you did justice where it belonged; you gave the little girl who was thrown into their dirty death-trap at the corner of Stewart avenue and Archer avenue, and was injured—"

"Mr. Lee:   I object.

"Mr. Chadbourne:   I will withdraw the remark.

"The Court:   I think it is uncalled for.   It will be stricken out, gentlemen.

"Mr. Chadbourne:   I will withdraw that remark, gentlemen."

A ruling of the court not being asked or made as to the first remark of counsel, and the court having sustained counsel's objection to the latter remarks, with the statement that they were uncalled for and stricken out, we are not prepared to hold, in this state of the record, that for these remarks alone, while very improper and calling for a severe rebuke to counsel from the court, a new trial should be awarded by this court.   E. J. & E. R. R. Co. v. Fletcher, 128 Ill. 619;   Marder v. Leary, 137 Ill. 323;   W. C. St. R. R. Co. v. Sullivan, 165 Ill. 304.

If the court was of opinion, as it stated on the hearing of

the motion for new trial, "that for the alleged improper remarks of plaintiff's counsel to the jury, said verdict should be reduced $400," then a new trial should have been granted, for it seems impossible that the learned trial judge could have determined to what extent the verdict was induced by counsel's remarks.

Because the verdict is against the manifest weight of the evidence, the judgment is reversed and the cause remanded.